IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FRAN M. KEATON                                                                                    PLAINTIFF

v.                                    CASE NO. 4:07-CV-00634 BSM

PROPERTY & CASUALTY INS.
COMPANY OF HARTFORD                                                                      DEFENDANT

## ORDER

Pending before this court are plaintiff's motion for partial summary judgment [Doc. # 25] and defendant's motion for summary judgment [Doc. # 41]. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted in part and denied in part.

## I. BACKGROUND FACTS

Plaintiff Fran Keaton had a homeowner's insurance policy with defendant Property and Casualty Insurance Company of Hartford. In early 2005, plaintiff had numerous personal items moved from her home to a 10' x 30' storage unit located at McCain Mini Storage. [Defendant's material facts ¶ 1; ¶ 14; Plaintiff's response to ¶ 1] On December 19, 2005, plaintiff and her friend Roger Opseth met a moving company at the storage unit. [Plaintiff's Dec. 1, 2006 depo. pp. 25-26] When plaintiff put her key in the lock, she discovered that her lock had been changed. [Plaintiff's Dec. 1, 2006 depo. p. 24] Plaintiff contacted the manager of the facility, Terry Hendricks. [Plaintiff's Dec. 1, 2006 depo. p. 24] Hendricks told her that there had been a break-in at her building and that her lock had been replaced. [Plaintiff's

Dec. 1, 2006 depo. p. 24] Plaintiff filed a report with the Pulaski County Sheriff's Department and directed the movers to haul the remaining items in the unit away before the deputy sheriff arrived. [Defendant's material facts ¶ 5; Plaintiff's response to ¶ 5] When the deputy arrived, the only item plaintiff initially reported missing was a .38 caliber handgun. [Defendant's material facts ¶ 6; Plaintiff's response to ¶ 6] A few days later, plaintiff reported her loss to defendant and was told to put together a list of the items missing from her storage unit. [Plaintiff's Dec. 1, 2006 depo. pp. 40-41]

On May 5, 2006, plaintiff faxed to defendant a document consisting of over forty pages of inventoried items and invoices. [Defendant's material facts ¶ 9; Plaintiff's response to ¶ 9] Plaintiff submitted a revised list on May 15, 2006, which included but is not limited to the following items:  (a) four solid pecan curios valued at $2,000 each; (b) one 14 kt gold Omega watch valued at $5,000;  (c) one .38 caliber Smith & Wesson in a leather case valued at $450; (d) one orthopedic leather recliner valued at $6,000: (e) 150 Emmett Kelly Collectibles valued at $25,000; (f) one Toshiba 56" High Definition Television still in the box valued at $3,500; (g) several bottles of men and women's fragrance with a total value of $64,704; (h) fourteen rugs valued at $2,300 each; (i) one 12' x 20' custom wood gazebo kit valued at $25,000; and (j) several bottles of liquor with a total value of $14,119.19. [Defendant's material facts ¶ 11; Plaintiff's response to ¶ 11]

After receiving plaintiff's list, defendant assigned Special Investigations Unit Investigator Todd Almond to investigate plaintiff's claim. [Defendant's material facts ¶ 14;

Plaintiff's response to ¶ 14] On June 7, 2006, Almond took plaintiff's recorded statement in his car. [Plaintiff's response to defendant's ¶ 15; Plaintiff's Dec. 1, 2006 depo. p. 48] During plaintiff's statement, Almond accused her of committing insurance fraud. [Transcript of taped statement p. 11] He also threatened plaintiff with criminal prosecution if she did not drop her claim. [Plaintiff's response to defendant's ¶ 17] Almond's accusations reduced plaintiff to tears. [Plaintiff's additional facts ¶ 17]

In June 2006, plaintiff discontinued her insurance premiums. [Defendant's material facts ¶ 23; Plaintiff's response to ¶ 23] On July 10, 2006, defendant denied plaintiff's claim because it suspected she had filed a fraudulent claim. [Defendant's exhibit 9] That same day, a cancellation notice was sent to plaintiff notifying her that the policy would be cancelled effective July 27, 2006, for nonpayment of premiums. [Defendant's exhibit 10; Deposition of William Patton pp. 15-16]

On July 17, 2007, plaintiff filed a complaint against defendant alleging breach of contract and bad faith. She seeks compensatory and punitive damages, penalties, attorney's fees, and all other relief the court deems proper. On May 15, 2008, plaintiff filed a motion for partial-summary judgment and on June 2, 2008, defendant filed a motion for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that a party is entitled to summary judgment in the party's favor, "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, *884 (1990); *Hohn v. Spurgeon*, 513 F.3d 827, *829 (8th Cir. 2008); *Amir v. St. Louis Univer.*, 184 F.3d 1017, *1024 (8th Cir. 1999). A genuine issue of material fact exists if there is a dispute about a fact material to the outcome of the case, and the dispute is genuine in that a reasonable jury could return a verdict for either party. *Jones v. MN Dep't of Corrections*, 512 F.3d 478, *480 (8th Cir. 2008); *see American Fed'n of State, County, & Mun. Employees v. City of Benton, Ark.*, 513 F.3d 874, *878 (8th Cir. 2008); *Minder v. Local 373*, 513 F.3d 854, *860 (8th Cir. 2008). The evidence presented must be viewed in a light most favorable to the nonmoving party, and the nonmoving party is entitled to the benefit of all reasonable inferences. *Amir*, 184 F.3d at 1024. The nonmoving party must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, *812 (8th Cir. 2008).

### III.  DISCUSSION

A.   Plaintiff's Motion for Partial Summary Judgment

Plaintiff alleges that defendant intends to assert a policy defense based upon an exclusion for business property. She points out that her policy does not contain a business property exclusion. Defendant admits that the policy does not contain an exclusion for business property and that it cannot be asserted as a defense. Defendant urges the court to

deny plaintiff's motion as moot.

Under Article III of the Constitution, federal courts may adjudicate only actual, on going cases or controversies. *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, *1035 (8th Cir. 2004). A "case or controversy" requires a definite and concrete controversy involving adverse legal interest at every stage in the litigation. *Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040, *1042 (8th Cir. 1995). Various doctrines, including the doctrine of mootness, provide the tools used to determine whether a plaintiff presents a justiciable case or controversy. *McCarthy*, 359 F.3d at *1035. Mootness occurs when the parties lack a legally cognizable interest in the outcome. *Olin Water Servs. v. Midland Res. Labs., Inc.*, 774 F.2d 303, *305 (8th Cir. 1985).

In the present case, there is no controversy. Both parties admit that the defendant cannot assert a business property exclusion. Therefore, the issue is moot and the plaintiff's motion for partial summary judgment should be denied.

B.   Defendant's Motion for Summary Judgment

1. *Breach of Contract*

To prevail on her breach of contract claim, plaintiff must prove (1) the existence of a valid agreement; (2) the defendant's breach of that agreement; and (3) the plaintiff suffered damages as a result of the breach. *Powell v. TPI Petroleum, Inc.*, 510 F.3d 818, *822 (8th Cir. 2007); *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, *202, 61 S.W.3d 801, *807 (2001); *Ultracuts, Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, *231-32, 33 S.W.3d 128,

*133 (2000). It is undisputed that a valid agreement existed between the parties. Plaintiff alleges defendant breached their agreement by failing or refusing to pay her claim and by violating the "Lifetime Continuation Agreement" clause in the contract by cancelling her policy without notice.

Defendant has denied plaintiff's claim because it suspects plaintiff has filed a fraudulent claim. [Defendant's exhibit 9] Whether a party has committed fraud is almost always a question of fact for the jury to decide. *U.S. Ozone Co. v. Morrilton Ice Co.*, 186 Ark. 485, 54 S.W2d 282 (1932). Fraud is a question of law only when the facts are undisputed and but one reasonable conclusion can be reached from the evidence, or where there is an entire failure to sustain the issue. *Id*.

In support of its suspicion, defendant first proffers the deposition testimony of Terry Hendricks who served as the manager of McCain Mini Storage at the time of plaintiff's loss. Hendricks testified that plaintiff reported to him that the lock on her unit had been changed and that he accompanied her back to her unit. [Hendericks depo. pp. 8-9] Hendricks testified that he opened the door to the unit and looked inside. [Hendericks depo. p. 9] He described the unit as orderly. [Hendricks depo. p. 10] He stated that the unit contained furniture, including tables, a desk, a bed, and a headboard. [Hendricks depo. p. 9] Hendricks testified that plaintiff stated that some bottles of liquor were missing. [Hendricks depo. p. 9] He stated that plaintiff never mentioned that she was missing cases of perfume, rugs, furniture, paintings, or a gazebo. [Hendricks depo. p. 11]

6

Defendant also submits its claims notes. The notes for January 18, 2007, reveal that defendant received a call from a gentleman named Roger, who was plaintiff's friend. Roger told defendant's investigator that plaintiff had inflated her claim. He also said that plaintiff told him that she did not have a gazebo kit in the unit.

In her deposition testimony, plaintiff stated that she planned on starting a business and had begun purchasing things at wholesale. [Plaintiff's depo. pp. 61-62] She testified that on the night that she discovered her loss, she was in "such a frame of mind" that when the sheriff's deputy arrived the only item she reported missing was the .38 caliber handgun. [Plaintiff's video depo. transcript p. 127] She said that when she notified defendant a few days later, she had about half of her lists together and that she offered to fax what she had to defendant but was told to wait until she completed her lists. [Plaintiff's depo. p. 41] She stated that, over the holidays, she misplaced the lists. [Plaintiff's depo. p. 41] She also stated that she misplaced the photographs she took on the night she discovered her loss. [Plaintiff's depo. p. 42]

Arkansas law provides that:

> (B) Cancellations of property and casualty policies shall only be effective when notice of cancellation is mailed or delivered by the insurer to the named insured and to any lienholder or loss payee named in the policy at least twenty (20) days prior to the effective date of cancellation. However, when cancellation is for nonpayment of premium, at least ten (10) days' notice of cancellation accompanied by the reason for cancellation shall be given.

Ark. Code Ann. § 23-66-206(9)(B) (Supp. 2007). Defendant states that it complied with Arkansas law and therefore did not breach the parties' agreement when it cancelled

plaintiff's policy. Defendant has filed the cancellation notice into the record and it indicates that the notice of cancellation was mailed to plaintiff on July 11, 2006.

Plaintiff testified that defendant usually billed her premiums to her Discover Card. [Plaintiff's video depo. transcript p. 31]. She said that she first learned her policy was being cancelled in a phone call, which, at first, she thought was a prank. [Plaintiff's video depo. transcript p. 31] She was uncertain as to whether she received a certified letter notifying her that her policy was being cancelled. [Plaintiff's video depo. transcript p. 31]

Although plaintiff's breach of contract claim is thin, the court is required to view any and all evidence in the light most favorable to the non-moving party. Consequently, after viewing the evidence in a light most favorable to plaintiff and giving her the benefit of the doubt, a genuine issue of fact exists as to whether she had adequate notice that her policy was being cancelled. For this reason, defendant's motion for summary judgment as to plaintiff's breach of contract claim is denied.

2. *Bad Faith*

The standard for establishing a claim for bad faith is rigorous and difficult to satisfy. *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, *627, 210 S.W.3d 84, *87 (2005). An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, *433, 208 S.W.3d 792, *801 (2005); *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, *429, 64 S.W.3d 720, *723 (2002); *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, *56, 991 S.W.2d 555, *559 (1999). Bad faith is defined

as dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *Switzer*, 362 Ark. at *433, 208 S.W.3d at 801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at *723; *Swaim*, 338 Ark. at *56, 991 S.W.2d at *559. Mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *Switzer*, 362 Ark. at *433, 208 S.W.3d at 801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at *723; *Swaim*, 338 Ark. at *56, 991 S.W.2d at *559. The tort of bad faith does not arise from the mere denial of a claim; rather, there must be affirmative misconduct on the part of the insurer. *Switzer*, 362 Ark. at *433, 208 S.W.3d at 801; *Freeman*, 347 Ark. at *429, 64 S.W.3d at *723; *Swaim*, 338 Ark. at *56, 991 S.W.2d at *559.

Actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge. *Hall v. Modern Woodmen of Am.*, 882 F.Supp. 830, *833 (E.D. Ark. 1994). The following instances have been found to constitute bad faith: (a) where an insurance agent lied by stating there was no insurance coverage; (b) aggressive, abusive, and coercive conduct by a claims representative, which included the conversion of the insured's car; and (c) where a carrier intentionally altered insurance records to avoid a bad risk. *See Swaim*, 338 Ark. at *58; 991 S.W.2d at *561. Other bad conduct, however, has been specifically excluded from the definition of bad faith, including the following: (a) nightmarish red tape; (b) an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy; and (c) confusion over the referral process. *See id*.

Plaintiff seeks to impute the conduct of defendant's claim's investigator onto

defendant. She states that during her interview with the investigator, Todd Almond, he accused her of fraud. [Plaintiff's depo. p. 48] She describes Almond as not being very nice. [Plaintiff's depo. p. 48] She states that the experience was extremely upsetting. [Plaintiff's depo. p. 48]

In his deposition, Almond admitted that he lost his patience with plaintiff. [Almond depo p. 86] He, however, testified that he does not believe that his questioning was overly harsh. [Almond depo. P. 86] Almond also admits that he told plaintiff that a particular loss was not covered under her policy. [Almond depo. p. 134] Although this representation was later determined to be untrue, Almond defends his actions by stating that he did not know that his statement was untrue at the time he made the representation to plaintiff. [Almond depo. p. 134] Almond, however, admits that he lied to plaintiff when he told her that he had viewed the video surveillance tapes from McCain Mini Storage. [Almond depo. p. 127] Finally, Almond testified that he was aware that Arkansas has a mandatory reporting statute for fraud but that he elected not to report plaintiff's suspected fraud to the Arkansas Fraud Bureau as required by the statute. [Almond depo. pp. 114, 118] The statute in question is Arkansas Code Annotated section 23-66-505 (Supp. 2007), which provides in pertinent part:

> (a) A person engaged in the business of insurance having knowledge or a reasonable belief that a fraudulent insurance act is being, will be, or has been committed shall provide to the Insurance Commissioner the information required by, and in a manner prescribed by, the commissioner.
>
> (b) Any person engaged in the business of insurance who knowingly fails to report as required by subsection (a) of this section shall be guilty of a Class A misdemeanor.
>
> (c) Any other person having knowledge or a reasonable belief that a fraudulent

10

insurance act is being, will be, or has been committed may provide to the commissioner the information required by, and in a manner prescribed by, the commissioner.

In *Thomas v. Farm Bureau Insurance Co. of Arkansas, Inc.*, 287 Ark. 313, 698 S.W.2d 508 (1985), the insurer suspected that the fire that caused the insured's loss was the result of arson and sent a police officer to investigate. Despite his suspicion, the insurer failed to comply with Ark. Stat. Ann. § 66-5603(b)(1), now Ark. Code Ann. § 12-13-303, which required an insurer to notify an authorized agency and the insured in writing when the insurer suspected that a fire loss was the result of arson. It was found that the insurer's failure to comply with the statute was relevant to the question of whether the insurer acted in bad faith.

The court specifically finds that defendant's failure to comply with the reporting statute is not, in itself, dispositive on the issue of whether defendant committed fraud. The failure to report only goes to the weight of the evidence supporting plaintiff's contention that defendant's denial of benefits was in bad faith. This factor, when viewed along with Almonds misrepresentation about the viewing of the surveillance tape, presents sufficient evidence to form an issue of disputed fact for the jury to decide. Therefore, defendant's motion for summary judgment regarding plaintiff's claim for bad faith is denied.

3. *The limits of the policy*

Defendant states that even if plaintiff is entitled to collect on her claims, the express terms of the insurance policy limits her claim to $1,000 for items used primarily for business. After reviewing the policy, the court finds that the policy is limited to $1,000 for property

that is used primarily for business purposes. Further, in her deposition testimony, plaintiff stated that she planned on starting a business and had begun purchasing things at wholesale. [Plaintiff's depo. pp. 61-62]. Therefore, the court finds that plaintiff's recovery for all items stored for the purpose of opening her business is limited to $1,000 and summary judgment is granted on this issue.

## IV. CONCLUSION

Plaintiff's motion for partial summary judgment [Doc. # 25] is denied as moot. Defendant's motion for summary judgment [Doc. # 41] is granted in part and denied in part. There are no genuine issues of material fact in dispute regarding the policy limits for items being stored for business purposes and therefore plaintiff's damages for breach of contract are limited to $1,000 for the items she stored for the purpose of starting a business. There are genuine issues of material fact in dispute regarding whether defendant breached its agreement with plaintiff and as to whether defendant acted in bad faith; and therefore defendant's motions for summary judgment regarding the plaintiff's breach of contract claim and bad faith claim are denied.

IT IS SO ORDERED this 30th day of July, 2008.

*Brian S. Miller*
UNITED STATES DISTRICT JUDGE